UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| GREEN ICE TECHNOLOGY, LLC, | | § |
| | | § |
| Plaintiff, | | § |
| | | § |
| v. | | § |
| | | § |
| ICE COLD 2, LLC | (1) | § |
| EcoCool Technologies, LLC | (2) | § |
| EcoCool Technologies Management, | | § |
| LLC | (3) | § |
| IceCOLD Technology, LLC | (4) | § |
| EcoCool World, LLC | (5) | § CASE NO. |
| EcoCool Enterprises, LLC | (6) | § |
| U.S. Refrigeration Technologies, LLC | (7) | § |
| Joshua R&D Technologies, LLC | (8) | § |
| Search Results Media | (9) | § |
| Bhavesh Patel | (10) | § |
| Peter J. Lewis | (11) | § |
| Donald A. Bryan | (12) | § |
| David Ross Pickett | (13) | § |
| Edward Wackendorfer | (14) | § |
| Rakesh Desai | (15) | § |
| Wayne Ragan | (16) | § |
| Jamie McDaniel | (17) | § |
| Patrick Morgan | (18) | § |

## PLAINTIFFS' ORIGINAL COMPLAINT

## I.  PRELIMINARY ALLEGATIONS

This is an action for injunctive relief and damages in excess of $75,000.00, excluding attorneys' fees, costs, and interest.    Plaintiff GREEN ICE TECHNOLOGY, LLC ("GIT") sues IceCold2, LLC ("IC2"), EcoCool Technologies, LLC ("ECT"), EcoCool Technologies Management, LLC, ("ECTM"), IceCOLD Technology, LLC (ICT), EcoCool World, LLC ("ECT/ECW"), EcoCool Florida, LLC ("ECF"), EcoCool Enterprises, LLC ("ECE"), U.S. Refrigeration Technologies, LLC ("USRT"), Joshua R&D Technologies, LLC ("JRDT"), Search Results Media, Ltd. ("SRM"), Bhavesh Patel, Peter J. Lewis, Donald A. Bryan, David Ross Pickett, Edward Wackendorfer, Rakesh Desai, Wayne Ragan, Jamie McDaniel, and Patrick Morgan, seeking judgments for damages and injunctive relief, and alleges tortious interference with a contract, Tortious interference with prospect contract and business relations, civil fraud, unfair competition by misappropriation, civil conspiracy, unfair trade practices, unauthorized access to a computer network, and planting a malicious computer code in a computer network.

## I.    PARTIES

1. **Plaintiff**, Green Ice Technology, LLC   ("GIT"), is a Texas limited liability company with its principal place of business in Austin, Travis County, Texas.

2.  **Defendant** IceCOLD2, LLC ("IC2") is a Florida limited liability company with its principal place of business in Hillsborough County at 10012 N. Dale Mabry Hwy, Suite B-107, Tampa, Florida 33618

3.  **Defendant** EcoCool Technologies, LLC ("ECT"), is a Florida limited liability company with its principal place of business in Hillsborough County at 10012 N. Dale Mabry Hwy, Suite B-107, Tampa, Florida 33618

4.  **Defendant** EcoCOOL Technologies Management, LLC ("ECTM") is a Florida limited liability company with its principal place of business in Hillsborough County, Florida.

5.  **Defendant** IceCOLD Technology, LLC ("ICT") is a Texas limited liability company with its principal place of business in Plano, Texas.

6.  **Defendant** EcoCool World, LLC ("ECW") is a Florida limited liability company with its principal place of business in Hillsborough County, at 10012 N. Dale Mabry Hwy, Suite B-107, Tampa, Florida 33618

7.  **Defendant** EcoCool Enterprises, LLC ("ECE") is a limited liability company in Marietta, Georgia.

8.  **Defendant** U.S. Refrigeration Technologies, LLC ("USRT"), principal place of business in Plano, Texas.

9.  **Defendant** Joshua R&D Technologies, LLC is a Texas Limited Liability Company with its principal place of business in Collin County, Texas.

3

10. **Defendant** Search Results Media ("SRM") is a Canadian company based in Ontario, Canada, with offices in Tampa, Florida and India.

11. **Defendant** Bhavesh Patel ("Patel") is an individual residing in Hillsborough County, Florida.

12. **Defendant** Peter J. Lewis ("Lewis") is an individual residing in Hillsborough County, Florida.

13. **Defendant** Donald A. Bryan ("Bryan") is an individual residing in Hillsborough County, Florida.

14. **Defendant** David Ross Pickett ("Pickett") is an individual residing in Plano, Texas.

15. **Defendant** Edward R. Wachendorfer ("Wachendorfer") is an individual residing in Collin County, Texas.

16. **Defendant** Rakesh Desai ("Desai") is an individual residing in Ontario, Canada with offices in Toronto, Canada and Tampa, Florida.

17. **Defendant** Wayne Ragan ("Ragan"), is an individual residing in Marietta, Georgia.

18. **Defendant** Jamie McDaniel ("McDaniel"), is an individual residing in Marietta, Georgia.

19. **Defendant** Patrick Morgan ("Morgan"), is an individual residing in Marietta, Georgia.

4

## II.    JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because this suit concerns controversies exceeding the required amount under multiple provisions of the United States Code. This Court also has jurisdiction because of diversity of the parties.

Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391 because one or more parties conduct business here, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## III.    FACTUAL BACKGROUND

### A.  Generally

1.    David R. Pickett is the CEO of USRT, and inventor of the IceCOLD energy saving catalyst, the CEO and owner of the manufacturer, USRT, and owner of the IceCOLD assets and trade secret formula.

2.    The Product, IceCOLD, is a synthetic catalyst that dramatically increases the performance and efficiency of air conditioning and refrigeration systems. One application of the Product lasts the entire life of the equipment and results in substantial savings on energy and maintenance costs. In addition, the Product decreases the amount of a

unit's carbon emissions, qualifying as a green technology.

3.    The Product has been independently tested and installed in thousands of applications across multiple industries, including manufacturing, retail, government, services construction and wholesale.

4.  The Product has not been patented, and on information and belief, its formula is known only to David Pickett or his trust.

5.  Pickett and his wholly-owned entity, U.S. Refrigeration Technologies, LLC ("USRT") sell the Product through a network of licensed distributors, who purchase the Product from Pickett and then sell the Product on the open market or to sub-distributors.

6.  A substantial and important aspect of the business of the distributors is the generation of leads. As such, distributors spend time and money identifying prospective customers, marketing the Product to those prospective customers, and building relationships with the prospective customers.

7.    Similarly, distributors often enter into agreements with lead generators. A lead generator assists in setting up contacts to sell the Product on behalf of a distributor and earns a commission on each sale of the Product.

8.  In order to protect the valuable relationships that distributors, sub-

distributors and lead generators create and foster, Pickett and the distributor developed a "Protect List."  When a distributor places a prospective customer on the Protect List, then the other distributors refrain from marketing or selling to that prospect.  These terms are memorialized in the individual distributor agreements.

9.    The Protect List mutually benefits all parties involved. Distributors of the Product can be confident that marketing efforts and resources will not be wasted by another distributor circumventing the process and swooping in to try to close a sale. Moreover, the Protect List helps Pickett ensure that the Product is held in the highest regard in the industry, rather than being associated with disrespectful and disloyal distributors.

**The Business of GIT**

10.    GIT was founded in 2009. For the last eight (8) years, GIT has worked to build a relationship with Pickett and a distribution channel for the Product. GIT invested millions of dollars in marketing efforts, testing, analysis and business building efforts related to marketing and selling the Product. GIT has attended trade shows and delivered awards to institutions that have been recognized for their "Green" or positive effects on the environment.

11.    GIT's goal is in investing expensive resources to improve and

7

market the Product and to establish a global presence through its training and support of sub-distributors in over 20 different countries around the world.

### GIT's Distributor Agreement

12.      On November 26, 2013 (GIT began operations as a sub-distributor of Huddle, from 2009-2012 when Huddle went out of the IceCOLD business), GIT entered into the Independent Distributor Direct-Buy Distribution Agreement with USRT (the "GIT" Distributor Agreement"). A true, complete and authentic copy of the GIT Distributor Agreement is attached as Exhibit A.

13.      Pursuant to the GIT Distributor Agreement, USRT engaged GIT as a Master Distributor of the Product.

14.      GIT is also entitled to enter into agreements with sub-distributors and lead generators to assist with its distribution efforts. Accordingly, GIT invested substantial time and resources seeking out potential business relationships in order to execute sub-distributor and lead generator agreements.

15.      These agreements are mutually beneficial. GIT has the expertise, training, marketing and access to the Product. The sub-distributors have relationships with prospective purchasers of the Product.

16.      In order to ensure that the marketing efforts of GIT and its sub-

distributors and lead generators were protected from encroachment by other distributors of the Product, GIT, as per the GIT Distributor Agreement, developed and submitted to Pickett a "Protect List," which identifies exclusive and protected prospective customers,

17.    Specifically, Exhibit D to the GIT Distributor Agreement provides, in relevant part:

1) Independent    Distributor    shall    be    granted Exclusivity by Customer for each customer whom he registers with US Refrigeration Technologies, LLC that is not already registered by another distributor and whom he is actively working with and has appointments scheduled with the principle decision maker with a fixed date or has already had the presentation.

2) US Refrigeration Technologies, LLC will not circumvent    Independent    Distributor's    own Distributors, ISRs, salesmen and customers; US Refrigeration Technologies, LLC will not sell directly to them unless Independent Distributor has abandoned them.

18.     Accordingly, GIT's Distributor Agreement protects GIT from both the manufacturer of the Product, USRT, and other distributors of the product, like Defendants, from marketing or attempting to sell to or contact customers on its Protect List.

19.     Until the execution of the Management Agreement, described below, the entire distribution network for the Product complied with the spirit and the terms of the Protect List.

## The Management Agreement

20.     On June 6, 2014, IceCOLD2 and USRT entered into a Management Agreement. A true, complete and authentic copy of the Management Agreement is attached as Exhibit B.

21.     Pursuant to the Management Agreement, USRT engaged IceCOLD2 to manage some of USRT's distributors of the Product and to manage the Product in the marketplace. The parties agreed that it was "essential to maintain a network of qualified distributors for the distribution of the IceCOLD." In this Management Agreement GIT was expressly listed as a "retained distributor" of USRT, which made it clear that IceCold2 had no right to manage or deal directly with GIT or its sub-distributors, and that GIT would continue to buy product directly from USRT and as a Master Distributor, would operate as usual with USRT, with all of its rights as a distributor intact, and

unaffected by any of the terms of this management agreement between IceCold2, USRT, and the much smaller distributors subject to this agreement.

22.    Among IceCOLD2's duties per the Management Agreement are:

1) To sell the Product "through the established USRT network of distributors in a vigorous and diligent manner;"

2)  To assist the distributors in maintaining and servicing an active customer base and promptly respond to inquiries and requested assistance from distributors and /or customers and prospective customers;

3)  To comply with all distributor agreements between USRT and its distributors.

23.    Specifically, IceCOLD2 has contacted GIT's contacts, lead generators and sub-distributors and informed them that GIT does not have a valid distribution agreement.

24.    In addition, IceCOLD2 has circumvented GIT and its sub-distributors by contacting, interfering, marketing and attempting to sell directly to GIT's contacts, lead generators and sub-distributors.

25.    IceCOLD2 has otherwise failed to comply with and honor GIT's Protect List and the Letters of Exclusivity issued by USRT, as well as the

customers of GIT who were under NDAs and who had been issued certificates of insurance by USRT as GIT customers.

**B. Distribution Rights/Agreement**

26.    See Green Ice Technology, LLC's (GIT) Master Distributorship Agreement with U.S. Refrigeration Technologies, LLL (USRT) (Exhibit A). There is a definition of a customer "Protect List" which ensures that customers who are being developed in a "long sale" process, and are being served at the corporate level by the distributor, cannot be contacted or otherwise interfered with by a competing distributor. This also serves to prevent the unprofessional calls by several distributors to the same customer, which aggravates the customer and often results in loss of the sale as well as damage to IceCold's goodwill and reputation.

27.  Green Ice Technology ceased filing new prospects with USRT in 2013 to defend against the incessant interference and poaching of customers put on USRT's protect list by Defendants. With the agreement of David Pickett, GIT and Pickett relied on the request by GIT for USRT Certificates of Insurance to be issued to active clients as "registration" of GIT clients. Further proof of compliance with this agreement was Pickett's continuing practice of issuing "Letters of Exclusivity" to GIT's customers and accounts. No requests for certificates of insurance were made until after formal presentations were made to the client and non-disclosure agreements (NDAs) were executed.

12

## C. Interferences With Green Ice Technology, LLC (GIT)

28. On multiple occasions various Defendants breached the distribution rights of GIT and its sub-distributors by ignoring their protected clients on the "protect list," disregarding "Letters of Exclusivity" issued to customers by USRT on behalf of GIT and its sub-distributors (See Exhibit C as example), and the signed GIT NDAs of customers who were issued certificates of insurance as exclusive customers of GIT and/or its sub-distributors. In addition, IceCold2 and various Defendants brazenly contacted GIT's customers and fraudulently informed them that "IceCold2, EcoCool World, or one of their other companies" was the *"only distributor authorized to sell IceCOLD."* This was done in an obvious conspiracy to systematically attempt to steal the customer or to deprive GIT of the customers they had developed at great expense over several years, in an obvious effort to tortiously interfere with GIT's pending and future sales, or to drive GIT out of business so they could later attempt to steal their customers and sub-distributors. This pattern of deceit and fraud has cost GIT and its sub-distributors over twenty million dollars ($20,000,000.00) in lost sales and revenue in the U.S. alone in 2015 and 2016, and has done untold damage to the reputation and goodwill of IceCOLD, which GIT and others worked for years to build up. GIT and its sub-distributors have been responsible for as much as seventy (70%) percent of IceCOLD's worldwide sales in recent years, and have practically made IceCOLD

what it is today. Then the Defendants came along, who have relatively minor sales results, and recklessly put years of hard work and goodwill in jeopardy with their pattern of lawless interference and violations of distributor rights and protections that were consistently honored, until they ignored every rule and protocol of USRT and tried to steal business that they could not obtain or service on their own by following the law or complying with long-standing practices and rights expressly set forth in every IceCOLD distributor agreement.

### D. Computer Hacking /Website Hacking/ Unauthorized Access to Computer Network

29.   GIT attempted to enter its website on or around December 7, 2015 and was directed to IceCOLD2.com. GIT contacted the Web hosting company GoDaddy to start a search to find out the reason for the re-direction.

30.   At Green Ice Technology's request, GoDaddy.com investigated the site and found that Green Ice's website www.greenicetech.com was being forwarded to www.icecoldenergysolutions.com which was then being forwarded to www.icecold2.com.

31.   The owners of websites www.icecoldenergysolutions.com and www.icecold2.com are:

> 1) David Ross Pickett, 6601 Wickliffe Trail, Plano 75023.
>
> (Owner of US Refrigeration Technologies LLC, Joshua

14

Holdings LLC, and Joshua R&D Technology LLC)

2) EcoCool Technology/ EcoCool World Have offices at 10012 North Dale Mabry Hwy. Site B-107, Tampa Florida 33618.

32.  Bhavesh Patel, Peter J.M Lewis, Donald A. Bryan, Rakesh Desai are the officers and directors of IceCOLD2/EcoCool World. www.icecold2.com, www.ecocoolworld.com

33.  GIT's computer network was hacked, accomplished by gaining access to Green Ice Technology's GoDaddy Domains administration and websites by hijacking the administrative functions for the Domains.

34.  Defendants and those at their direction redirected GIT's site www.greenicetech.com to www.icecoldenergysolutions.com, owned by David Pickett, and then to www.icecold2.com.

35.  In order for Defendants to redirect Green Ice Technology's site to another one(s), they had to access Green Ice Technology's computers and computer network without authorization to do so.  No person had given or has given, permission to the Defendants to access Green Ice Technology's computers or computer network.

36.  Accessing a computer or computer network without authorization is a federal crime pursuant to 18 U.S. Code §1030, prosecutable in U.S. District Court

as a felony charge.

37.  In addition to GoDaddy verifying the intrusion by an unauthorized user/hacker into Green Ice Technology's computers and computer network, multiple customers who visited Green Ice Technology's website complained that their computers were immediately infected with viruses when they tried to open Green Ice Technology's site.

38.  GoDaddy informed Green Ice Technology that their site was under constant attack with the majority of the attacks coming from either Toronto, Canada or India. There were as many as 10,000 Bots attacking the website every day. Bhavesh Patel has a strong connection with IT companies in India. Rakesh Desai owns Search Results Media, a web service computer marketing company in Toronto, Canada; according to GoDaddy's forensic analysis regarding the source of the hacking and redirecting of GIT's website, the attacks show originations in Toronto, Canada and India.

39.  David Pickett instructed GIT to only use their hotmail email accounts. Pickett knew that IceCOLD2 / EcoCOOL World were hacking the website, as of August 9, 2016 when he sent an email in all capitals saying  "GLAD TO SEE YOU ARE USING HOTMAIL." "YOU SHOULD NOW STOP LOOSING (sic) CUSTOMERS AND DEALS." David Pickett finally instructed GIT to only use the hotmail email after several years and multiple complaints by GIT that their

customers were being contacted and contracts were being lost as a direct result of the unlawful tactics, misrepresentations, and tortious interference by IceCold2/EcoCool Technologies/EcoCool World/Peter Lewis/Don Bryan/Bhavesh Patel.

### E. Planting a Malicious Code/Malware in a Computer Network

40.  In addition to hijacking the web page/website/domains by redirecting the sites as stated above, the Director of sales for Green Ice Technology's computer was hacked and the entire computer was accessed. Malware was placed in the computer system, including ransom ware and multiple viruses. Documents that were stolen include customer lists, email addresses, deletion of documents, technical protocols and procedures proprietary to Green Ice Technology.

41. The computer of Green Ice Technology's sales director was serviced by VICOM PC and found to have viruses, spyware, ransom ware, fake anti-virus software and malware, which were removed.  Six (6) months later, the computer system was diagnosed with the same types of viruses, malware and ransom ware which had been reinstalled in the system.

### F. Theft of Intellectual Property / Videos and Hacking of Fourth Wall Productions Secure Drive

42. On March 30th 2017, a sub-distributor of Green Ice Technology informed Green Ice that he had downloaded an instructional video from the US

Refrigeration Technologies website.  The video was Green Ice Technology's proprietary installation video, found on www.icecold2.com. IceCOLD2/EcoCool had edited the video removing all references to Green Ice Technology leaving only the narrator's voice. In addition, IceCOLD2/EcoCool World has published the video on YouTube and claimed ownership both on YouTube and on www.icecold2.com.

43.    Green Ice Technology engaged Fourth Wall Productions to produce training videos and interviews for the exclusive purpose of training their sub-distributors and technicians in the installation of the product IceCOLD. The videos were funded by Green Ice Technology and no other person or entity had or has any legal right to publish, display, distribute or edit the material.  Fourth Wall Productions administers access to the videos, and it retains the legacy rights to the video and did not authorize or assign any rights to IceCOLD2, EcoCool World, or US Refrigeration Technologies regarding this work.

44.    IceCOLD2 stole a Letter of Recommendation from Siemens, AG Spain and published it on www.icecold2.com with a COPYRIGHT marked 2015.  The U.S. Copyright office shows no copyright registered. This is the work product of Siemens AG that precludes any legal registration of a copyright by anyone other than Siemens AG.  Green Ice Technology has Non-Disclosure Agreements with Siemens and their property manager CBRE, which specifically prohibit any

publication in a public media or marketing Siemens' recommendation to the public.

45.  IceCOLD2 also apparently stole test reports from Green Ice Technology's distributor in Spain and placed them on their websites www.icecold2.com/ www.ecocoolworld.com after copying the test reports onto IceCOLD2's letterhead, falsely displaying them as their work product. The two tests are the Dreams Cinema, Ice Palace Madrid Spain and Cajamar Almiria.

46.  This theft of intellectual property and work product has caused millions of dollars of losses and damages to Green Ice Technology, its Sub- distributors, and Fourth Wall Productions and the losses can be substantiated.  It has also put the Siemens/CBRE contract in serious danger of cancellation.

## IV.   CLAIMS FOR RELIEF /CAUSES OF ACTION

47. The Plaintiffs re-allege all preceding paragraphs herein for all causes of action.

48.  The Plaintiffs have a right to bring this action to recover damages, and to seek injunctive relief.

## COUNT ONE

## TORTIOUS INTERFERENCE WITH CONTRACT

49.  The elements of tortious interference with a contract are:  (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

50.  IceCold2, Peter Lewis, and Bhavesh Patel interfered with GIT, and its sub-distributors' sole source agreements, CBRE Master Purchasing Agreements. Some of the sub-distributor contracts that were violated when IceCold2 interfered and contacted their customers were Ventus Mundi and HEB, Mark Bedford, Allopen/B-Cast Wumart, Mark Forester, Boots Alliance U.K. (Walgreens Boots Alliance). This was done in 2015, 2016, and 2017.

## COUNT TWO

## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS AND BUSINESS RELATIONS

51.  The elements of a claim for tortious interference with a prospective business relationship are: (1) a reasonable probability that the plaintiff would have entered

into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

52.  Plaintiff GIT, and its sub-distributors, spent years performing expensive and time-consuming pilot tests and independent studies in order to prove the efficacy of the IceCOLD product and technology to large commercial customers and to develop credibility and trust with such customers. The pilot tests, independent "third party" white papers, and validation studies take years to complete and hundreds of thousands of dollars. All of this is paid for and performed by GIT and/or its sub-distributors at their expense; none of these marketing and engineering efforts, nor the expensive time, travel, and tests was/is paid for or borne by the manufacturer of IceCOLD, U.S. Refrigeration Technologies, LLC ("USRT"), or any Defendant.

53.  Just when GIT is about to complete a purchase order or agreement to begin installation on a large number of facilities, Peter J. Lewis, CEO of IceCold 2, or Don A. Bryan, COO, or other principals with IceCold2 (or EcoCool Technologies LLC (ECT), EcoCool World LLC (ECW), and the other corporate entities

controlled by these same executives) such as Chairman Bhavesh Patel, or Don Bryan call or contact, or send an email, to the customer claiming "that they are the only authorized Distributor that can sell IceCOLD" to the customer, or that GIT is not "an authorized distributor of IceCOLD". This fraudulent and false representation is an independent tortious act of interference done by Defendants with the express purpose, and conscious desire, of preventing the prospective contract between GIT and the customer from occurring. This blatant attempt to "steal" the customer at this stage is done even though these Defendants are fully aware that GIT has, in most of these cases, a letter signed by Defendant, David Pickett, the owner of USRT and the manufacturer of IceCOLD, which clearly states that GIT is "the exclusive authorized distributor" to sell and install IceCold for each of these particular customers.

54. This pattern of tortious interference with prospective contracts began in January, 2013, and continues unabated to this day. The first attempt to disrupt GIT's customer relations was made in 2013 by Peter Lewis's attempt to steal the AT&T account. GIT had been working with AT&T for over a year. This was a year before IceCold2 entered into the management/asset purchase agreement with Pickett/USRT. After USRT entered into the agreement with IceCold2/ECT the attacks on GIT's customers became a constant problem. Unbeknownst to GIT, these Defendants were reading GIT's emails and redirecting inquiries from GIT's

website, which enabled them to go directly to the specific company representatives GIT was working with for each customer. Peter Lewis, Don Bryan, and EcoCool Enterprises only targeted GIT's major clients, and would contact these clients just as GIT was very close to finalizing the contract terms and signing the agreement. The Defendants knew full well in each of these instances of tortious interference that their actions were "certain or substantially certain" to interfere with the imminent prospective contracts with these major customers, such as Amazon, CBRE, HEB Supermarkets, Dwyer Group/Aire Serv, and AT& T, just to name a few (See Exhibit A). The defendants interfered with The Dwyer Group customers in the UK and Portugal which caused the President and CEO of Dwyer Group to write a letter on February 14, 2014, clarifying that they had the authorization to market in the UK and Portugal after IceCold2 principals contacted their customers in the UK in an effort to steal the sales to their "protected" customers. This exact pattern of fraudulent and tortious activity was repeated in Australia, China, Thailand, New Zealand, Central America, Mexico, and the United Kingdom. Even if the Defendants' blatant acts of interference raised legal issues and confusion and if they did not succeed in their attempt steal the customer, they caused the customer to cancel or put on hold dozens of major contracts and prospective contracts. The damage to the reputation of IceCOLD, and the direct harm to GIT and its sub-distributors was

enormous, and the direct damages to GIT is over twenty million ($20,000,000.00) dollars in the United States alone, and over double that amount in the countries listed above. GIT suffered this actual harm and damages as direct result of Defendant's acts of interference.

## COUNT THREE

## CIVIL CONSPIRACY

55.  The elements of civil conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result.

56.  GIT re-alleges the allegations in Count Two above.

57. IceCOLD2, EcoCool Technologies, ECW, Desai, Patel, Lewis, Pickett, Wachendorfer, and Bryan conspired to or acquiesced in the on-going pattern of tortious interference with GIT's relationships with its sub-distributors, such as, Mark Bedford in New Zealand and Australia, The Dwyer Group in the UK, Ventus Mundi in the U.S. and Mexico, Allopen/B-Cast in China, and customers like Amazon, CBRE, HEB Supermarkets, Wumart, Circle K, AT&T, and others.

58.  IceCOLD2, ECW, ECT, Patel, Lewis, and Bryan engaged in overt acts in furtherance of the conspiracy, as described above. USRT, Pickett, and Wachendorfer enabled and allowed this tortious violation of GIT's

express rights in GIT's and its sub-distributors' Distributor Agreements, including the customers on GIT's "protect list", even after Pickett and USRT had issued letters of "exclusivity" before and after the tortious interference described herein. Pickett and Wachendorfer could have taken several actions to protect GIT and their distributors including terminating the distributorship of IceCold2/ECT/ECW for flagrant violations of the express terms in such agreements, and terminating the Management Agreement for violation of its terms to honor the protect list and terms of all distribution agreements covered by such agreement, and for interfering with and fraudulently telling GIT's customers that "IceCOLD2 was the only authorized distributor to sell" the product worldwide. They did this knowing that GIT was expressly exempt from such Management Agreement as a "retained distributor" by USRT. Moreover, these fraudulent actions by defendants caused great harm to the reputation and goodwill of IceCOLD, which is, in and of itself, cause for termination of the management agreement and the prospective asset purchase which was already in default for non-payment.

59.  Upon information and belief, Patel, Lewis, Wachendorfer, Pickett, Desai and Bryan had personal stakes in the activities of the conspiracy that are separate and distinct from the entities in which they may have roles.

60.  As a direct and proximate cause, GIT has been damaged.

## COUNT FOUR

## FRAUD

61.  The elements of a fraud claim are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

62.  The Defendants made material misrepresentations of fact as referenced in Paragraphs 1 – 60 above, and the Defendants knew the representations were false when made, and/or made them recklessly without any regard of the truth and as a positive assertion.  The defendants made the misrepresentations with the intent that the other party should act upon them, and the party acted in reliance on the representation; and thereby suffered injury.

63.  Defendants made false representations to many of GIT's customers and sub-distributors, they knew that their claims that GIT was not authorized to sell IceCold and that IceCold2 and the other defendants were the "only authorized distributor" of the product were false. They did so with reckless disregard of the truth that, in fact, GIT had letters of "exclusive authority to sell" IceCold to such

customers. Defendants made such representations with the intent that the company would act on such misrepresentations, and in order that defendants could steal the customer or sew such confusion by its representations, that the sale by GIT would be lost despite years of validating and proving the efficacy of the product, and at the time the purchase order was imminent. The customer acted on such representations and suffered damages in the form of hundreds of thousands, and in some cases millions of dollars, of verified and proven energy cost savings, and GIT lost millions in revenue when these fraudulent representations made by defendants caused the purchase order to be cancelled or put on hold by the customer.

## COUNT FIVE

## UNFAIR COMPETITION BY MISAPPROPRIATION

64.  The elements of an unfair competition or common law misappropriation claim are: (1) the creation of plaintiff's product through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff.

65.  GIT created, at the cost hundreds of thousands of dollars, and years of labor, skillful measurements, and "before and after" pilot test experimentation,

proprietary, copyrighted training materials and videos, installation protocols, and operating parameters of compressors before the proper installation of the IceCOLD catalyst into the air conditioning (A/C) system.

66.  These proprietary protocols ensured that GIT installs and follow-up protocols consistently maximized the energy savings performance of IceCold and the long-term, consistent return on investment (ROI). On March 30, 2017 one of GIT's sub-distributors reported that he had downloaded a proprietary training video that was owned and copyrighted by GIT, from the IceCOLD2 website, www.icecold2.com  The video was produced by Fourth Wall Productions' owner, Steve Sowrey, for the sole and exclusive use of GIT in training its installers, for which GIT paid over four thousands ($4,000.00) dollars. Mr. Sowrey did the narration of the video. IceCold2 not only stole or hacked this video unlawfully from GIT's website, they edited the video (but kept Mr. Sowrey's voice) and removed all reference of Green Ice Technology, and claimed ownership of the video on both IceCold2's website and on YouTube. The video legacy rights were owned by Mr. Sowrey, a Complainant in this case, and he never assigned any rights or authorized this work to be used by IceCold2, EcoCool World, or USRT.

67.  IceCold2 also stole a confidential Letter of Recommendation from Siemens, posted it on its website with a fake copyright mark. The years of work and testing done by GIT was being used by a competitor who had paid nothing and done

28

nothing to earn this recommendation. This was the work product of Siemens AG, which precludes any registration of a copyright by anyone other than Siemens. GIT had NDA's with Siemens and CBRE, their property manager, which specifically prohibits publishing this letter to the public.

68.  IceCold2 also stole, by hacking the GIT website, confidential test reports from GIT's sub-distributor in Spain and posted them on their website and falsely displayed this on their letterhead as their work product. These tests were for Dreams Cinema, Ice Palace Madrid, Spain and Cajamar Almiria (Theft of IP and Hacking above at Section F, Paragraph 42 et. seq.). These actions by IceCold2 clearly used stolen information to gain a competitive advantage over GIT without spending any time or money of their own, but to misappropriate GIT's work product to directly compete with GIT and divert customers from GIT by using GIT's proprietary videos and test results to do so (a fraudulent "free ride").

69.  This theft of intellectual property and work product has caused tens of millions of dollars of lost sales and damages to GIT, its sub-distributors, and Fourth Wall Productions. It also has put the Siemens and CBRE contracts at serious risk of cancellation, which will irreparably harm multi-millions of dollars of future business if not enjoined.

**COUNT SIX**

**INTRUSION AND UNAUTHORIZED ACCESS
TO COMPUTER NETWORK**

70.  The elements of unauthorized access to a computer or computer network

are:  Whoever intentionally accesses a computer without authorization or exceeds

authorized access, and thereby obtains **(A)** information contained in a financial

record of a financial institution, or of a card issuer as defined in section

1602(n) [1] of title 15, or contained in a file of a consumer reporting agency on a

consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C.

1681 et seq.); **(B)** information from any department or agency of the United States;

or **(C)** information from any protected computer; or

whoever knowingly and with intent to defraud, accesses a protected computer

without authorization, or exceeds authorized access, and by means of such conduct

furthers the intended fraud and obtains anything of value, unless the object of the

fraud and the thing obtained consists only of the use of the computer and the value

of such use is not more than $5,000 in any 1-year period

71.  Defendants herein, acting in concert, hacked into Green Ice Technology's

computer network by an unauthorized entry or access to the computers/computer

network, or by unauthorized entries or accesses to the computers/computer

network.

72.  Defendants, acting in concert, obtained access to Green Ice Technology's GoDaddy administration and websites by manipulating the administrative functions for the Domains, all without authorization.

73.  Defendants and those at their direction, acting in concert, redirected Green Ice Technology's site www.greenicetech.com to www.icecoldenergysolutions.com, owned by David Pickett, and then to www.icecold2.com.

74.  Accessing a computer or computer network without authorization is a federal felony pursuant to 18 U.S. Code §1030(a).

75.  Green Ice Technology's computers/computer network were/are protected computers, and no one outside certain personnel within Green Ice Technology was authorized to access the computers/computer network, change or re-direct their websites, change domains/names, or change or move content of the websites, including videos.

76.  Sub-distributors of Green Ice Technology downloaded an instructional video from the US Refrigeration Technologies' website.  The video was Green Ice Technology's proprietary installation video, found on www.icecold2.com. IceCOLD2/EcoCool had edited the video removing all references to Green Ice Technology leaving only the narrator's voice. In addition, IceCOLD2/EcoCool

World has published the video on YouTube and claimed ownership both on YouTube and on www.icecold2.com.

77.  The actions of the Defendants affected interstate commerce and foreign commerce.

## COUNT SEVEN

## PLANTING A MALICIOUS CODE/MALWARE IN COMPUTER

78.  The elements of planting a malicious code or malware are:  Whoever **(A)** knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; **(B)** intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or **(C)** intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

79.  Defendants herein, acting in concert, and after gaining unauthorized entry and access to the computers/computer network, planted and inserted into the computers/computer networks a malicious code, being ransom ware, malware that intruded into the computer network by allowing continued unauthorized access to the computers/computer network of Green Ice Technology to the Defendants, and those at their direction.

80.  The Defendants, acting in concert, thus obtained continued unauthorized

access to Green Ice Technology's emails, as well as the ability to change, move, and edit content of the company website.

81.  Defendants, acting in concert, obtained unauthorized access to Green Ice Technology's GoDaddy administration and websites by manipulating the administrative functions for the Domains, wherein the Defendants did change, move, and steal for their own uses, content of Green Ice Technology's website, including videos created exclusively for Green Ice Technology and its product(s).

82.  In addition, the Defendants stole Green Ice Technology documents including email communications/messages, customer lists, email addresses, deletion of documents, and proprietary information of Green Ice Technology, including technical protocols and procedures.

83. VICOM PC services Green Ice Technology's computer/computer network, and VICOM PC verified that Green Ice Technology's computers/computer network had viruses, spyware, ransom ware, fake anti-virus software and malware.  Much if not the same, was later re-installed without authorization, and detected approximately six (6) months after the initial detection of the viruses, spyware, ransom ware, fake anti-virus software, and malware.

84.  Planting a malicious code or malware in a computer or computer network is a federal felony pursuant to 18 U.S. Code §1030(a)(5).

## COUNT EIGHT

### THEFT

85.  The elements of theft are:  a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

b)  Appropriation of property is unlawful if:

(1)  it is without the owner's effective consent;

(2)  the property is stolen and the actor appropriates the property knowing it was stolen by another

86. The Plaintiffs re-allege Paragraphs 1 – 84 for this cause of action alleging theft of Green Ice Technology's various documents including email communications/messages, customer lists, email addresses, deletion of documents, and proprietary information of Green Ice Technology, including technical protocols and procedures, and website content, including videos.

### REQUESTED RELIEF

WHEREFORE, GIT demands judgment in its favor and against IceCold2, LLC ("IC2"), EcoCool Technologies, LLC ("ECT"), EcoCool Technologies Management, LLC, ("ECTM"), IceCOLD Technology, LLC (ICT), EcoCool World, LLC ("ECT/ECW"), EcoCool Florida, LLC ("ECF"), EcoCool Enterprises, LLC ("ECE"), U.S. Refrigeration Technologies, LLC ("USRT"),

Joshua R&D Technologies, LLC ("JRDT"), Search Results Media, Ltd. ("SRM"),

Bhavesh Patel, Peter J. Lewis, Donald A. Bryan, David Ross Pickett, Edward

Wackendorfer, Rakesh Desai, Wayne Ragan, Jamie McDaniel, and Patrick

Morgan jointly and severally, for damages,  including  special damages such

as lost profits, disgorgement of profits, interest, costs and such further relief as

the Court deems just and proper.  Plaintiff also demands a jury trial.


                          Respectfully submitted,



                           /s/  John Teakell
                          JOHN TEAKELL
                          Law Office of John R. Teakell
                          2911 Turtle Creek Blvd.
                          Suite 300
                          Dallas, TX  75219
                          Tele.   (214) 523-9076
                          Fax      (214) 523-9077