# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GREEN ICE TECHNOLOGY, LLC | § | |
| | § | |
| v. | § | |
| | § | |
| ICE COLD 2, LLC, ECOCOOL | § | |
| TECHNOLOGIES, LLC, ECOCOOL | § | Civil Action No. 4:17-CV-00341 |
| TECHNOLOGIES MANAGEMENT, LLC, | § | Judge Mazzant |
| ECOCOOL WORLD, LLC, ECOCOOL | § | |
| ENTERPRISES, LLC, SEARCH RESULTS | § | |
| MEDIA, BHAVESH PATEL, PETER J. | § | |
| LEWIS, DONALD A. BRYAN, RAKESH | § | |
| DESAI, WAYNE RAGAN, JAMIE | § | |
| MCDANIEL, and PATRICK MORGAN | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Donald A. Bryan's ("Bryan") Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #28). After reviewing the relevant pleadings and motion, the Court finds that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

## BACKGROUND

David R. Pickett ("Pickett")—CEO of U.S. Refrigeration Technologies ("USRT")—invented IceCold: a chemical that improves the performance and efficiency of air conditioning and refrigeration systems. Pickett sells IceCold through a network of licensed distributors to customers spanning the air conditioning industry.

Green Ice Technology, LLC ("GIT") was founded in 2009. Since then, GIT—first as a sub-distributor from 2009 to 2012 and then as a distributor from 2013 onward—built a relationship with Pickett and a distribution channel for IceCold. GIT planned to market IceCold globally through a network of sub-distributors in over twenty countries around the world.

In 2013, GIT entered an Independent Distributor Direct-Buy Distribution Agreement with USRT (the "GIT Distributor Agreement"). With this agreement, GIT became a master distributor of IceCold. Per the GIT Distributor Agreement, GIT could submit a "Protect List" to Pickett, identifying exclusive and prospective customers. The Protect List intended to bar encroachment on GIT's customers and prospective customers by other IceCold distributors and sub-distributors. Under the GIT Distributor Agreement, USRT agreed not to circumvent GIT's "own Distributors, ISRs, salesmen and customers" and not to "sell directly to [GIT's own Distributors, ISRs, salesmen and customers] unless [GIT] has abandoned them." (Dkt. #5 at pp. 8–9.)

On June 6, 2014, IceCOLD 2, LLC ("Ice Cold 2") and USRT entered into a Management Agreement whereby Ice Cold 2 would manage some of USRT's distributors of IceCold. The Management Agreement listed GIT as a "retained distributor" of USRT. (Dkt. #5 at p. 9). As a retained distributor, GIT had to buy IceCold exclusively from USRT and kept all of its rights as a distributor. Such rights included GIT's privilege under the GIT Distributor Agreement to name its customers and potential customers in order to protect them from encroachment from other IceCold distributors and sub-distributors. Per the Management Agreement, Ice Cold 2 had to "comply with all distributor agreements between USRT and its distributors." (Dkt. #5 at p. 10).

Thereafter, GIT alleges that Ice Cold 2 contacted, interfered with, marketed to, and attempted to sell directly to GIT's contacts, lead generators, and sub-distributors. GIT claims that Ice Cold 2 neither complied with nor honored GIT's Protect List and letters identifying exclusive customers. GIT avers that Ice Cold 2 told GIT's contacts, lead generators, and sub-distributors that GIT had no valid distribution agreement. GIT alleges that Defendants, including Bryan, knew that their actions were "'certain or substantially certain' to interfere with the imminent [sic]

prospective contracts with [GIT's] major customers, such as Amazon, CBRE, HEB Supermarkets, Dwyer Group/Aire Serv, and AT&T, just to name a few." (Dkt. #5 at p. 22.)

GIT also claims that Ice Cold 2 hacked GIT's website, www.greenicetech.com, to re-direct online customers to www.icecoldenergysolutions.com and then to www.icecold2.com (Dkt. #5 at p. 13). GIT alleges that the owners of the website www.icecoldenergysolutions.com and www.icecold2.com are Pickett, EcoCool Technologies, LLC ("EcoCool Technologies"), and EcoCool World LLC ("EcoCool World"). GIT further avers that Bhavesh Patel ("Patel"), Peter J.M. Lewis ("Lewis"), Bryan, and Rakesh Desai ("Desai") are the officers and directors of Ice Cold 2 and EcoCool World (Dkt. #5 at pp. 13–14).

Quite relevantly to this matter, GIT asserts that Bryan called HEB—a Texas company and alleged client of GIT and of GIT's Sub-Distributor Ventus Mundi ("VM")—and claimed that "IceCOLD2/EcoCool World was the sole distributor of IceCold." (Dkt. #5 at p. 22; Dkt. #49 at p. 10).[1] GIT alleges that Defendants repeated such activity in Australia, China, Thailand, New Zealand, Central America, Mexico, and the United Kingdom (Dkt. #5 at p. 22).

Bryan denies these allegations in a sworn affidavit and claims that he had only visited Texas twice on business to provide technical support to a "customer of a distributor" unrelated to GIT's claims. (Dkt. #28 at p. 3; Dkt. #28, Exhibit A at p. 1). Bryan's affidavit further claimed that he is a resident of Florida and keeps no property, mailing address, bank account, or records in Texas. Bryan denies any interference with GIT's sub-distributor, explaining "outside of two visits to an unrelated distributor's customer, I have had no contacts with Texas in connection with the facts alleged in this case, or otherwise." (Dkt. #28, Exhibit A at p. 1). Bryan also denies redirecting GIT's website, as well as any ownership in or control of Ice Cold 2 or EcoCool World

---

[1] GIT first alleged that HEB was its own client and later claimed that HEB was a client of GIT's sub-distributor—Ventus Mundi (Dkt. #49 at pp. 10–11).

(Dkt. #28, Exhibit A at p. 2). Bryan admitted that he was an employee of EcoCool World from June 25, 2014, to June 21, 2017 (Dkt. #28, Exhibit A at p. 1). Bryan claimed that he was "originally promised a small ownership interest in EcoCool World, LLC, but was never given that ownership interest." (Dkt. #28, Exhibit A at p.1).

On June 9, 2017, GIT filed an amended complaint against Defendants, asserting claims for tortious interference with contract, tortious inference with prospective contracts and business relations, civil conspiracy, fraud, unfair competition by misappropriation, intrusion and unauthorized access to computer network, planting a malicious code/malware in a computer, and theft (Dkt. #5 at pp. 19–33). On September 5, 2017, Bryan filed a Motion to Dismiss for Lack of Jurisdiction (Dkt. #28). On September 27, 2017, GIT filed its response (Dkt. #49). On October 4, 2017, Bryan filed his reply (Dkt. #53). On October 10, 2017, GIT filed its sur-reply (Dkt. #54). On October 13, 2017, Bryan filed a motion to strike GIT's sur-reply or, alternatively, its response to GIT's sur-reply (Dkt. #57).[2]

**LEGAL STANDARD**

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). The plaintiff need not, however, establish jurisdiction by a preponderance of

---

[2] Bryan argued that "GIT did not seek leave of Court to file a Sur-Reply and, more importantly, it is wholly improper to attach new evidence to a Sur-Reply." (Dkt. #57 at p. 1). Thus, Bryan asked the Court to ignore a photograph of Bryan at a hotel in Dallas included in GIT's Sur-Reply. As the Order will show, this photographic evidence did not alter the Court's jurisdictional analysis.

Also on October 13, 2017, GIT filed a motion to amend its response to Bryan's motion to dismiss for lack of jurisdiction (Dkt. #58). On October 26, 2017, Bryan responded to GIT's Motion to Amend/Correct its Response to Bryan's Motion to Dismiss (Dkt. #60). GIT argued that the Court should allow it to amend its Response to include the photograph of Bryan at the hotel in Dallas since GIT obtained the photograph after filing its Response (Dkt. #58 at p. 2). Again, as this Order will show, the photograph did not change the Court's personal jurisdictional analysis of Bryan.

4

the evidence; a prima facie showing suffices. *Id.* The Court must resolve all undisputed facts, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.*

Plaintiff bears the burden of establishing that the non-resident Defendant has contacts with the forum state sufficient to invoke the jurisdiction of this Court. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005). If there is no evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the party asserting jurisdiction is merely required to present facts sufficient to constitute a prima facie case of personal jurisdiction. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 342–43 (5th Cir. 2004). The prima facie showing may be established by the pleadings, depositions, affidavits, or exhibits of record. *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). The Court must accept as true the non-mover's uncontroverted allegations and resolve any factual conflicts in favor of the plaintiff. *Freudensprung*, 379 F.3d at 343. However, the Court is not required to credit conclusory allegations, even if uncontroverted. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

A court's exercise of personal jurisdiction over a non-resident defendant comports with constitutional due process requirements when (1) the defendant "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Both prongs must be satisfied in order for a court to exercise personal jurisdiction over the defendant. *Id.*

The "minimum contacts" prong is further subdivided into contacts that confer "specific jurisdiction" and those that confer "general jurisdiction." General jurisdiction exists when a non-

resident defendant's contacts with the forum state are "substantial, continuous, and systematic." *Johnston v. Multidata Sys. Int'l Corp.*, 532 F.3d 602, 609 (5th Cir. 2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–19 (1984). The defendant's contacts with the forum state are evaluated "over a reasonable number of years" up to the date the lawsuit was filed, and are to be reviewed in total rather than in isolation from one another. *Id.* at 610. When general jurisdiction exists, the forum state may exercise jurisdiction over the defendant on any matter, even if the matter is unrelated to the defendant's contacts with the forum. *Id.* at 613.

When a plaintiff asserts specific jurisdiction over a non-resident defendant, the Court must determine (1) whether "the defendant purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) whether "the controversy arises out of or is related to the defendant's conduct with the forum state." *Freudensprung*, 379 F.3d at 343. The fact that a Texas plaintiff suffered some harm in Texas is insufficient to establish specific jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 473 n.41 (5th Cir. 2002). Rather, the focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation." *Freudensprung*, 379 F.3d at 343. Contacts that are "random, fortuitous, or attenuated" do not satisfy the minimum contacts requirement. *Moncrief*, 481 F.3d at 312.

If the plaintiff makes a prima facie showing of minimum contacts, then the burden shifts to the defendant to show that the Court's exercise of jurisdiction would not comply with "fair play" and "substantial justice." *Freudensprung*, 379 F.3d at 343. In making a fundamental fairness determination, the Court must consider: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the several states' shared interest in

furthering fundamental social policies. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

## ANALYSIS

The Court must first determine whether Bryan's contacts with Texas are a basis for general jurisdiction. General jurisdiction exists "when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic." *Johnston*, 535 F.3d at 609. The "'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Id.* (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted)). "'Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction.'" *Id.* (quoting *Gazprom*, 481 F.3d at 312 (citation omitted)). Finally, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.*

Bryan argues that the Court has no general jurisdiction over him. Bryan denies that he personally maintained any "substantial" or "continuous activities" in the forum. To that end, Bryan submitted an affidavit, claiming that he resides in Florida and has no property, mailing address, bank account, or records in Texas. In that affidavit, Bryan further advanced that he had no ownership in or control of Ice Cold 2 or EcoCool World. Bryan also claims that outside of two visits to an unrelated distributor's customer, he has "no contacts with Texas in connection with the facts alleged in this case, or otherwise." (Dkt. #28, Exhibit A at p. 1).

GIT counters that Bryan's business activities permit the Court's general jurisdiction over him. GIT alleges that Bryan admitted working for or being affiliated with EcoCool World and EcoCool Technologies and that Pickett and USRT provided distribution rights to the companies with which Bryan is affiliated and, thus, to him. GIT posits that "there have been countless

7

contacts by Pickett with the Defendants, including IceCOLD 2, LLC, EcoCool World, LLC, EcoCool Technologies, LLC, and thus Defendant Bryan." (Dkt. #49 at p. 7). GIT next alleges that Bryan's "LinkedIn" profile lists him as Chief Operating Officer ("COO") of EcoCool World. GIT also contends that Bryan is an officer of Ice Cold 2 and, thus, falls within the Court's personal jurisdiction. Finally, GIT declares that Bryan's "countless contacts with Texas" include "travel, email and telephone communication." (Dkt. #54 at p. 3).

To support these allegations, GIT submitted evidence of two emails between Bryan and Pickett (Dkt. #49, Exhibit 2), an email from GIT's Dan Beszborn to Pickett and Gayle Bovington (Dkt. #49, Exhibit 1), and a social media photo of Bryan and other EcoCool Technologies personnel at a hotel in Dallas (Dkt. #54, Exhibit 1).

The Court resolves these pleaded factual conflicts in GIT's favor and accepts that Bryan communicated with Pickett, served as an officer of EcoCool World and Ice Cold 2, and visited a hotel in Dallas to do business with EcoCool Technologies. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Such contacts, however, cannot be the basis for general jurisdiction over Bryan. Though the photo of Bryan at the Dallas hotel casts doubt on his claim to have only visited Texas twice on business, this contact and the others mentioned above are not substantial, continuous, or systematic. *Johnston*, 535 F.3d at 609. If anything, they are random, fortuitous, and attenuated in nature. *Id.* Thus, the Court lacks general jurisdiction over Bryan.

The Court must next decide whether Bryan is subject to its specific jurisdiction. "Specific jurisdiction exists when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Dallas Texans Soccer Club v. Major League Soccer Players Union*, 247 F. Supp. 3d 784, 789 (E.D. Tex. 2017); *Helicopteros*, 466 U.S. at 414 n.8. "[A] single act by the defendant directed at the forum state can be enough to confer personal

8

jurisdiction if that act gives rise to the claim being asserted." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

Bryan argues that he is not subject to the Court's specific jurisdiction as "outside of two visits to an unrelated distributor's customer, [he] had no contacts with Texas in connection with the facts alleged in this case, or otherwise." (Dkt. #28, Exhibit A at p. 1). GIT argues that Bryan is subject to specific jurisdiction by allegedly calling HEB—a Texas company, as well as GIT's alleged client and VM's alleged client—and claiming that "IceCOLD2/EcoCool World was the sole distributor for IceCold," GIT was not authorized to distribute IceCold, and VM was not authorized to sell IceCold (Dkt. #5 at pp. 21–22; Dkt. #49 at p. 10). GIT also hinted at "currently developing evidence, and trying to verify specifics" that Bryan contacted a nationwide movie theater company that was a client or potential client of GIT, claiming to be the sole distributor of IceCold and, thus, interfering with a GIT client or potential client. (Dkt. #49 at p. 11). Bryan denied both allegations and provided an affidavit to support that denial (Dkt. #28, Exhibit A). The Court resolves these factual conflicts in GIT's favor. *Alpine View Co.*, 205 F.3d at 215.

GIT's amended complaint lists 8 causes of action: (1) tortious inference with contract, (2) tortious interference with prospective business relations, (3) civil conspiracy, (4) fraud, (5) unfair competition by misappropriation, (6) intrusion and unauthorized access to a computer network, (7) planting a malicious code/malware in a computer, and (8) theft (Dkt. #5 at pp. 19–33).

Bryan allegedly told HEB—a Texas company, GIT's alleged customer, and VM's alleged customer—that "IceCOLD2/EcoCool World was the sole distributor for IceCold," GIT was not authorized to distribute IceCold, and VM was not authorized to sell IceCold (Dkt. #5 at pp. 21–22; Dkt. #49 at p. 10). Bryan allegedly interfered in this manner "just when GIT [was] about to complete a purchase Order or agreement." (Dkt. #5 at pp. 21–22; Dkt. #49 at 10). GIT alleges

9

that Defendants, including Bryan, knew that such actions were "'certain or substantially certain' to interfere with the imminent [sic] prospective contracts with [GIT's] major customers, such as Amazon, CBRE, HEB Supermarkets, Dwyer Group/Aire Serv, and AT&T, just to name a few." (Dkt. #5 at p. 22.) This alleged action plausibly gave rise to at least one of GIT's causes of action—most likely tortious interference with contract, tortious interference with prospective business relations, or fraud. Thus, GIT plausibly pleaded that Bryan purposefully availed himself of Texas and his actions gave rise to GIT's cause of action.

Since GIT has made a prima facie showing of minimum contacts, the Court must determine if personal jurisdiction would violate "fair play" and "substantial justice." *Freudensprung*, 379 F.3d at 343.

Defendants must make a make a "compelling case" against the exercise of personal jurisdiction. "The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state, but rather is that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled to court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980). Bryan only argues that it would be unduly burdensome for him to litigate the case in Texas. Conversely, GIT has "a strong interest in securing convenient and effective relief." *See In re Norplant Contraceptive*, 886 F. Supp. at 591. Bryan purposefully interjected himself into this forum when he allegedly contacted GIT's Texas customer HEB to interfere with a prospective sale of IceCold. The State of Texas has a strong interest in protecting its residents from alleged tortious interference with contracts, tortious interference with prospective business relations, and fraud in Texas. Finally, Texas will provide a convenient forum for the adjudication of this case. The burden of requiring Bryan to litigate in Texas is no greater than the burden of requiring GIT to litigate in Florida. *Id*. As such,

the exercise of jurisdiction over Bryan by this Court would not offend traditional notions of fair play and substantial justice. Thus, the Court finds that it has personal jurisdiction over Bryan.

## CONCLUSION

Based on the foregoing, the Court **ORDERS** that Defendant Donald A. Bryan's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #28) is **DENIED.**

**SIGNED this 9th day of February, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE