# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GREEN ICE TECHNOLOGY, LLC, | § | |
| | § | |
| v. | § | |
| | § | |
| ICE COLD 2, LLC, ECOCOOL | § | |
| TECHNOLOGIES, LLC, ECOCOOL | § | Civil Action No. 4:17-CV-00341 |
| TECHNOLOGIES MANAGEMENT, LLC, | § | Judge Mazzant |
| ECOCOOL WORLD, LLC, ECOCOOL | § | |
| ENTERPRISES, LLC, SEARCH RESULTS | § | |
| MEDIA, BHAVESH PATEL, PETER J. | § | |
| LEWIS, DONALD A. BRYAN, RAKESH | § | |
| DESAI, WAYNE RAGAN, JAMEY | § | |
| MCDANIEL, and PATRICK MORGAN | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion to Dismiss of Defendants EcoCool Enterprises, LLC, Wayne Ragan, Jamey McDaniel and Patrick Morgan[1] (Dkt. #65). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

This is a case about commercial interference. David R. Pickett ("Pickett")—CEO of U.S. Refrigeration Technologies ("USRT")—invented IceCOLD: a chemical that improves the performance and efficiency of air conditioning and refrigeration systems. Pickett sells IceCOLD through a network of licensed distributors to customers spanning the air conditioning industry.

Green Ice Technology, LLC ("GIT") was founded in 2009. Since then, GIT—first as a sub-distributor from 2009 to 2012 and then as a distributor from 2013 onward—built a relationship with Pickett and a distribution channel for IceCOLD. GIT planned to market IceCOLD globally through a network of sub-distributors in over twenty countries around the world.

---

[1] The Court collectively refers to EcoCool Enterprises, LLC ("ECE"), Wayne Ragan ("Ragan"), Jamey McDaniel ("McDaniel"), and Patrick Morgan ("Morgan") as the "ECE Defendants."

In 2013, GIT entered an Independent Distributor Direct-Buy Distribution Agreement with USRT (the "GIT Distributor Agreement"). With this agreement, GIT became a master distributor of IceCOLD. Per the GIT Distributor Agreement, GIT could submit a "Protect List" to Pickett, identifying exclusive and prospective customers. The Protect List intended to bar encroachment on GIT's customers and prospective customers by other IceCOLD distributors and sub-distributors. Under the GIT Distributor Agreement, USRT agreed not to circumvent GIT's "own Distributors, ISRs, salesmen and customers" and not to "sell directly to [GIT's own Distributors, ISRs, salesmen and customers] unless [GIT] has abandoned them." (Dkt. #5 at pp. 8–9.)

On June 6, 2014, IceCOLD 2, LLC ("Ice Cold 2") and USRT entered into a Management Agreement whereby Ice Cold 2 would manage some of USRT's distributors of IceCOLD. The Management Agreement listed GIT as a "retained distributor" of USRT (Dkt. #5 at p. 9). As a retained distributor, GIT had to buy IceCOLD exclusively from USRT and kept all of its rights as a distributor. Such rights included GIT's privilege under the GIT Distributor Agreement to name its customers and potential customers in order to protect them from encroachment from other IceCOLD distributors and sub-distributors. Per the Management Agreement, Ice Cold 2 had to "comply with all distributor agreements between USRT and its distributors." (Dkt. #5 at p. 10).

Thereafter, GIT alleges that Ice Cold 2 contacted, interfered with, marketed to, and attempted to sell directly to GIT's contacts, lead generators, and sub-distributors. GIT claims that Ice Cold 2 neither complied with nor honored GIT's Protect List and letters identifying exclusive customers. GIT avers that Ice Cold 2 told GIT's contacts, lead generators, and sub-distributors that GIT had no valid distribution agreement. GIT alleges that Defendants knew that their actions were "'certain or substantially certain' to interfere with the imminent prospective contracts with

[GIT's] major customers, such as Amazon, CBRE, HEB Supermarkets, Dwyer Group/Aire Serv, and AT&T, just to name a few." (Dkt. #5 at p. 22.)

GIT also claims that Ice Cold 2 hacked GIT's website, www.greenicetech.com, to re-direct online customers to www.icecoldenergysolutions.com and then to www.icecold2.com (Dkt. #5 at p. 13). GIT alleges that the owners of the website www.icecoldenergysolutions.com and www.icecold2.com are Pickett, EcoCool Technologies, LLC, and EcoCool World LLC. GIT further avers that Bhavesh Patel, Peter J. Lewis, Donald A. Bryan, and Rakesh Desai are the officers and directors of Ice Cold 2 and EcoCool World (Dkt. #5 at pp. 13–14).

On June 9, 2017, GIT filed its First Amended Complaint against Defendants, asserting claims for tortious interference with contract, tortious inference with prospective contracts and business relations, civil conspiracy, fraud, unfair competition by misappropriation, intrusion and unauthorized access to computer network, planting a malicious code/malware in a computer, and theft (Dkt. #5 at pp. 19–33). On November 3, 2017, the ECE Defendants filed their Motion to Dismiss, seeking dismissal for lack of subject matter jurisdiction on the basis of diversity, lack of personal jurisdiction, and failure to state a claim (Dkt. #65). On November 17, 2017, GIT filed Plaintiff's Response to Defendants EcoCool Enterprises, LLC, Wayne Ragan, Jamie (Jamey) McDaniel, and Patrick Morgan's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Dkt. #74). On November 22, 2017, the ECE Defendants filed their Reply Brief in Support of Motion to Dismiss of Defendants EcoCool Enterprises, LLC, Wayne Ragan, Jamey McDaniel and Patrick Morgan (Dkt. #75). On April 2, 2018, the Court held a hearing, regarding the Motion to Dismiss of Defendants EcoCool Enterprises, LLC, Wayne Ragan, Jamey McDaniel and Patrick Morgan (Dkt. #65). On April 13, 2018, the ECE Defendants filed their Supplemental Brief in Support of Motion to Dismiss of Defendants EcoCool Enterprises, LLC, Wayne Ragan, Jamey

McDaniel and Patrick Morgan, withdrawing the portion of their motion to dismiss, concerning lack of subject matter jurisdiction on the basis of diversity (Dkt. #85).

## LEGAL STANDARD

**Rule 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir.

2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir.

2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with

the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*.

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

**Rule 12(b)(6)**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.),*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### I. Personal Jurisdiction

The ECE Defendants assert that GIT has alleged no factual basis for the Court to exercise general or specific jurisdiction over them and has failed to make a prima facie showing to support the Court's personal jurisdiction. The ECE Defendants argue that GIT's First Amended Complaint hardly mentions the ECE Defendants, describing ECE as a "limited liability company in Marietta, Georgia," labeling Ragan, McDaniel, and Morgan as "residents of Georgia," and only including ECE in the body of the First Amended Complaint through what the ECE Defendants claim appears to be a typo. (Dkt. #5 at p. 3; Dkt. #65 at p. 9). The ECE Defendants contend that GIT wholly fails to allege (1) that the ECE Defendants do any business in Texas, (2) that the ECE Defendants perpetrated any "acts or omission" in Texas, or (3) that any of the ECE Defendants are in any way connected to Texas (Dkt. #65 at p. 10). GIT counters that the First Amended Complaint "provides much specificity with regard to the Plaintiff's allegations of interference with contracts and computer network intrusion." (Dkt. #74 at p. 11).

#### A. GIT's Allegations Do Not Support General Jurisdiction over the ECE Defendants

Given the high bar for establishing general jurisdiction over a person or company, the pleaded allegations in GIT's First Amended Complaint do not support general jurisdiction. *Multidata Sys. Int'l Corp.*, 523 F.3d at 609. As the ECE Defendants accurately assert, GIT hardly mentions the ECE Defendants in the First Amended Complaint and, somewhat surprisingly given the circumstances, hardly discusses the ECE Defendants in its response to the ECE Defendants' motion to dismiss. Meanwhile, ECE is a Georgia limited liability company with its principal place of business in Marietta, Georgia (Dkt. #74, Exhibit A–B). Morgan, Ragan, and McDaniel also reside in Marietta, Georgia (Dkt. #5 at pp. 3–4). Accordingly, GIT has not adequately pleaded the

systematic and continuous contacts needed for the Court to exercise general jurisdiction over the ECE Defendants. *Cent. Freight Lines*, 322 F.3d at 381. Thus, the Court turns to whether it can wield specific jurisdiction over the ECE Defendants.

### B. GIT Has Sufficiently Pleaded Facts for the Court to Exercise Specific Jurisdiction over the ECE Defendants

To make a prima facie case for specific jurisdiction over the ECE Defendants, GIT must plead that the ECE Defendants purposefully availed themselves of Texas and the ECE Defendants' purposeful availment gave rise to GIT's claims. *STORMAN*, 310 F.3d at 378. Since the ECE Defendants presented no affidavits to controvert GIT's allegations, the Court must accept GIT's pleaded, factual allegations as true and resolve them in GIT's favor in its personal jurisdictional analysis. *Quintana*, 259 F. Supp. 2d at 557. In its response to the ECE Defendants' Motion to Dismiss, GIT claims that "the [ECE] Defendants, at least Defendant Jamie (Jamey) McDaniel," told the Siemens company in San Antonio, Texas ("Siemens's San Antonio Branch") that GIT was not a legitimate distributor of IceCOLD. (Dkt. #74 at p. 18). GIT alleged that it had "already been working with Siemens for several years." (Dkt. #74 at p. 18). The purportedly misrepresentative nature of the ECE Defendants' alleged statement overcomes GIT's failure to adequately explain GIT's business relationship with Siemens's San Antonio Branch as it could give rise to one or more of GIT's causes of action, including tortious interference with contract, tortious interference with prospective contracts and business relations, and fraud (Dkt. #5 at pp. 19–20, 25–26). Thus, GIT sufficiently pleaded facts for the Court to wield specific jurisdiction over the ECE Defendants.[2]

---

[2] The ECE Defendants do not argue that the Court's exercise of personal jurisdiction over them would be unfair or unreasonable. *See Seiferth*, 472 F.3d at 271. After considering the relevant factors, the Court does not find that wielding personal jurisdiction over the ECE Defendants would be unfair or unreasonable. *See Burger King*, 471 U.S. at 477.

## II. GIT Properly Pleaded a Claim Against the ECE Defendants

As they did with regard to personal jurisdiction, the ECE Defendants argue that GIT simply does not present sufficient facts to properly plead a claim for relief against any of the ECE Defendants. GIT counters that it presented enough facts to properly plead a claim for relief against all of the ECE Defendants.

GIT alleges that the ECE Defendants told Siemens's San Antonio Branch that GIT was not a legitimate distributor of IceCOLD when, in fact, GIT was a distributor of IceCOLD. The allegedly misleading nature of the ECE Defendants' statement saves GIT from having to thoroughly explain the allegation at this juncture of the proceeding. The ECE Defendants allegedly misrepresented GIT's right to distribute IceCOLD to a company that could have been GIT's customer or could have become GIT's customer. Due to GIT's unfocused briefing, the Court simply does not know. GIT's First Amended Complaint, however, does include claims for tortious interference with contract, tortious interference with prospective contracts and business relations, and fraud. The ECE Defendants' alleged misrepresentation to Siemens's San Antonio Branch could give rise to these causes of action. Thus, GIT properly pleaded a claim for relief against the ECE Defendants.

## CONCLUSION

It is therefore **ORDERED** that the Motion to Dismiss of Defendants EcoCool Enterprises, LLC, Wayne Ragan, Jamey McDaniel and Patrick Morgan (Dkt. #65) is hereby **DENIED**.

SIGNED this 17th day of May, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE