# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GREEN ICE TECHNOLOGY, LLC | § | |
| | § | |
| v. | § | |
| | § | |
| ICE COLD 2, LLC, ECOCOOL | § | |
| TECHNOLOGIES, LLC, ECOCOOL | § | Civil Action No. 4:17-CV-00341 |
| TECHNOLOGIES MANAGEMENT, LLC, | § | Judge Mazzant |
| ECOCOOL WORLD, LLC, ECOCOOL | § | |
| ENTERPRISES, LLC, SEARCH RESULTS | § | |
| MEDIA, BHAVESH PATEL, PETER J. | § | |
| LEWIS, DONALD A. BRYAN, RAKESH | § | |
| DESAI, WAYNE RAGAN, JAMIE | § | |
| MCDANIEL, and PATRICK MORGAN | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Peter J. Lewis's ("Lewis") Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #50) and Donald A. Bryan's ("Bryan") Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #28). After reviewing the relevant pleadings and motions, the Court finds that Defendants' motions to dismiss should be granted.

## BACKGROUND

David R. Pickett ("Pickett")—CEO of U.S. Refrigeration Technologies ("USRT")—invented IceCold: a chemical that improves the performance and efficiency of air conditioning and refrigeration systems. Pickett sells IceCold through a network of licensed distributors to customers spanning the air conditioning industry.

Green Ice Technology, LLC ("GIT") was founded in 2009. Since then, GIT—first as a sub-distributor from 2009 to 2012 and then as a distributor from 2013 onward—built a relationship with Pickett and a distribution channel for IceCold. GIT planned to market IceCold globally through a network of sub-distributors in over twenty countries.

In 2013, GIT entered an Independent Distributor Direct-Buy Distribution Agreement with USRT (the "GIT Distributor Agreement"). With this agreement, GIT became a master distributor of IceCold. Per the GIT Distributor Agreement, GIT could submit a "Protect List" to Pickett, identifying exclusive and prospective customers. The Protect List intended to bar encroachment on GIT's customers and prospective customers by other IceCold distributors and sub-distributors. Under the GIT Distributor Agreement, USRT agreed not to circumvent GIT's "own Distributors, ISRs, salesmen and customers" and not to "sell directly to [GIT's own Distributors, ISRs, salesmen and customers] unless [GIT] has abandoned them." (Dkt. #5 at pp. 8–9.)

On June 6, 2014, IceCOLD 2, LLC ("Ice Cold 2") and USRT entered into a Management Agreement whereby Ice Cold 2 would manage some of USRT's distributors of IceCold. The Management Agreement listed GIT as a "retained distributor" of USRT (Dkt. #5 at p. 9). As a retained distributor, GIT had to buy IceCold exclusively from USRT and kept all of its rights as a distributor. Such rights included GIT's privilege under the GIT Distributor Agreement to name its customers and potential customers in order to protect them from encroachment from other IceCold distributors and sub-distributors. Per the Management Agreement, Ice Cold 2 had to "comply with all distributor agreements between USRT and its distributors." (Dkt. #5 at p. 10).

Thereafter, GIT alleges that Ice Cold 2 contacted, interfered with, marketed to, and attempted to sell directly to GIT's contacts, lead generators, and sub-distributors. GIT claims that Ice Cold 2 neither complied with nor honored GIT's Protect List and letters identifying exclusive customers. GIT avers that Ice Cold 2 told GIT's contacts, lead generators, and sub-distributors that GIT had no valid distribution agreement. GIT claims that Defendants, including Bryan and Lewis, knew that their actions were "'certain or substantially certain' to interfere with the

imminent [sic] prospective contracts with [GIT's] major customers, such as Amazon, CBRE, HEB Supermarkets, Dwyer Group/Aire Serv, and AT&T, just to name a few." (Dkt. #5 at p. 22.)

GIT also claims that Ice Cold 2 hacked GIT's website, www.greenicetech.com, to re-direct online customers to www.icecoldenergysolutions.com and then to www.icecold2.com (Dkt. #5 at p. 13). GIT alleges that the owners of the website www.icecoldenergysolutions.com and www.icecold2.com are Pickett, EcoCool Technologies, LLC ("EcoCool Technologies"), and EcoCool World LLC ("EcoCool World"). GIT further contends that Bhavesh Patel, Lewis, Bryan, and Rakesh Desai are the officers and directors of Ice Cold 2 and EcoCool World (Dkt. #5 at pp. 13–14).

On June 9, 2017, GIT filed an amended complaint against Defendants, asserting claims for tortious interference with contract, tortious inference with prospective contracts and business relations, civil conspiracy, fraud, unfair competition by misappropriation, intrusion and unauthorized access to computer network, planting a malicious code/malware in a computer, and theft (Dkt. #5 at pp. 19–33).

On September 5, 2017, Bryan filed his Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #28). On September 27, 2017, GIT filed its response (Dkt. #49). On October 4, 2017, Bryan filed his reply (Dkt. #53). On October 10, 2017, GIT filed its sur-reply (Dkt. #54). On October 13, 2017, Bryan moved to strike GIT's sur-reply[1] (Dkt. #57). On September 28, 2017, Lewis filed

---

[1] Bryan argued that "GIT did not seek leave of Court [sic] to file a Sur-Reply and, more importantly, it is wholly improper to attach new evidence to a Sur-Reply." (Dkt. #57 at p. 1). Thus, Bryan asked the Court to ignore a photograph of Bryan at a hotel in Dallas included in GIT's Sur-Reply. As the Order will show, this photographic evidence did not alter the Court's jurisdictional analysis.

Also on October 13, 2017, GIT filed a motion to amend its response to Bryan's motion to dismiss for lack of jurisdiction (Dkt. #58). On October 26, 2017, Bryan responded to GIT's Motion to Amend/Correct its Response to Bryan's Motion to Dismiss (Dkt. #60). GIT argued that the Court should allow it to amend its Response to include the photograph of Bryan at the hotel in Dallas since GIT obtained the photograph after filing its Response (Dkt. #58 at p. 2). Again, as this Order will show, the photograph did not change the Court's personal jurisdictional analysis concerning Bryan.

his Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #50). On October 11, 2017, GIT filed its response (Dkt. #55). On October 18, 2017, Lewis filed his reply (Dkt. #59).

On April 2, 2018, the Court held an evidentiary hearing for GIT to prove that the Court could exercise personal jurisdiction over Bryan and Lewis, GIT failed to offer any evidence, and the Court scheduled another hearing for GIT to offer the evidence needed to prove that personal jurisdiction was proper (Dkt. #84). On April 19, 2018, the Court held a second hearing where GIT failed to present any evidence to prove that the Court could wield personal jurisdiction over Bryan and Lewis and the Court gave GIT seven (7) days to schedule deposition testimony to prove that personal jurisdiction was permissible (Dkt. #86 at p. 2). On April 26, 2018, GIT filed its Notice to the Court Regarding Depositions for Jurisdiction on Defendants Lewis and Bryan, explaining that it had scheduled a deposition for May 4, 2018 (Dkt. #87).

On May 22, 2018, Bryan and Lewis filed their Motion for Protective Order and Request for Dismissal, arguing that GIT's deposition testimony did not show that the Court could exercise personal jurisdiction over them (Dkt. #90). On May 25, 2018, GIT filed its Notice of Deposition and Other Evidence Concerning Defendants Lewis and Bryan's Motion to Dismiss for Lack of Jurisdiction, including deposition testimony that was, indeed, irrelevant to proving that the Court could exert personal jurisdiction over Bryan and Lewis (Dkt. #92). On May 29, 2018, GIT filed its Response to Defendants Lewis and Bryan's Motion for Protective Order and Requesting Dismissal (Dkt. #93). On May 31, 2018, the Court issued an Order, explaining it would keep Discovery Open for twenty-one (21) days for GIT to "prove personal jurisdiction over Bryan and Lewis," stipulating that "GIT must submit deposition transcript evidence or other admissible evidence to show that Bryan and Lewis contacted parties in Texas to interfere with GIT's current or prospective business operations, permitting the Court's personal jurisdiction over them."

4

(Dkt. #94 at p. 1).  GIT subsequently submitted no new evidence to prove that the Court could exert personal jurisdiction over Bryan and Lewis.  On June 21, 2018, Bryan and Lewis filed their Objections to Plaintiff's Deposition and Other Evidence [Dkt. No. 92] Concerning Defendants Lewis and Bryan's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #98).  On June 27, 2018, GIT filed its Reply to Defendants Lewis and Bryan's Objections to Plaintiff's Deposition and Other Evidence Concerning Jurisdiction (Dkt. #100).

## LEGAL STANDARD

**Rule 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant.  FED. R. CIV. P. 12(b)(2).  After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction,"  if a court rules on a motion without an evidentiary hearing.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits."  *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977).  Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists."  *Id.* (citing *Jones v. Petty-Ray*

*Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*

*AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecomm., Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the Court to exercise specific jurisdiction, the Court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for

7

consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*.

## ANALYSIS

### I. GIT Failed to Prove that the Court Can Exert General Jurisdiction over Bryan and Lewis

After examining the facts currently before the Court, it is clear that GIT cannot meet the burden to show that Bryan's and Lewis's contacts with Texas are sufficient to establish general jurisdiction. Bryan and Lewis are not Texas residents but reside in Florida. Such facts fall well short of the substantial hurdle of showing that Defendants are at home in Texas and fail to establish general jurisdiction over them. *See Daimler AG*, 571 U.S. at 127. In turn, the Court will determine whether it has specific jurisdiction over Bryan and Lewis.

### II. GIT Failed to Prove that the Court Can Wield Specific Jurisdiction over Bryan and Lewis

GIT claims that Bryan told HEB—a Texas company and GIT's customer—that GIT's sub-distributor had no right to sell IceCold to HEB (Dkt. #49 at p. 10). GIT further alleges that Lewis "continued contacting HEB in attempts to interfere with [GIT's] ongoing negotiations with HEB." (Dkt. #55 at pp. 11–12). Lewis and Bryan, however, deny these allegations and any other basis for the Court to wield personal jurisdiction over them in affidavits (Dkt. #28, Exhibit 2; Dkt. #50, Exhibit 2).

Bryan and Lewis declare that they keep no property, mailing addresses, bank accounts, or records in Texas (Dkt. #28, Exhibit 2 at p. 1; Dkt. #50, Exhibit 2 at p. 1). Lewis and Bryan also deny interfering with GIT's clients and redirecting GIT's website (Dkt. #28, Exhibit 2 at p. 2; Dkt. #50, Exhibit 2 at p. 1). Even if they had redirected GIT's website, which they both deny,

8

Bryan and Lewis aver that they would have done so from Florida (Dkt. #28, Exhibit 2 at p. 2; Dkt. #50, Exhibit 2 at p. 1).

Bryan states that he is a resident of Florida, has resided there for forty-six years, and has "never solicited customers in Texas . . . nor traveled to Texas to solicit customers." (Dkt. #28, Exhibit 2 at p. 1). Bryan generally declares that he has "not purposefully availed [himself] of the privilege of conducting business in Texas" and "outside of two visits to an unrelated distributor's customer, [he has] had no contacts with Texas in connection with the facts alleged in this case, or otherwise." (Dkt. #28, Exhibit 2 at p. 1).

Lewis asserts that he has resided in Florida since 2003 and has "had no business contacts with Texas since 2003 other than two phone calls with Daniel Beszborn at Green Ice that lasted five – ten minutes, plus a follow up-email." (Dkt. #50, Exhibit 2 at p. 1). Lewis avers that he "has not traveled to Texas to solicit customers since 2003." (Dkt. #50, Exhibit 2 at p. 1). Lewis declares that he has not "purposefully availed [himself] of conducting business in Texas since 2003" and "outside of two phone calls with Daniel Beszborn at Green Ice that lasted five – ten minutes, plus a follow up email, [he has] had no business contacts with Texas in connection with the facts alleged in this case, or otherwise." (Dkt. #50, Exhibit 2 at p. 1).

Since GIT's responses to Bryan's and Lewis's motions to dismiss offered no affidavits to create any genuine, material conflict with the facts established by Bryan's and Lewis's affidavits, the contradicted facts alleged in GIT's amended complaint are not taken as true. *See Quintana*, 259 F. Supp. 2d at 557 ("[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.") (citing *Wyatt*, 686 F.2d at 282–83).

Once the Court called an evidentiary hearing to determine if it could exercise personal jurisdiction over Bryan and Lewis, GIT had to "establish jurisdiction by a preponderance of the

9

admissible evidence." *Chinese Manufactured Drywall*, 742 F.3d at 585 (citing *Walk Haydel & Assocs., Inc.*, 517 F.3d at 241–42). During the evidentiary hearings and in a subsequent order (Dkt. #94), the Court told GIT what evidence was required to prove that the Court could exercise specific jurisdiction over Bryan and Lewis and GIT failed to present any relevant evidence. As alluded to previously, GIT submitted the deposition testimony of Cynthia Stewart ("Stewart"), that in no way showed Bryan's and Lewis's contacts with Texas permitted specific jurisdiction over them (Dkt. #92, Exhibit 1). Indeed, Stewart admitted that she was not personally aware of anyone, let alone Bryan or Lewis, interfering with "IceCold-related business with HEB. . . ." (Dkt. #92, Exhibit 1 at p. 8). Otherwise, Stewart's testimony did not discuss Bryan or Lewis interfering with GIT's business in Texas[2] (Dkt. #92).

Accordingly, GIT has not proved a basis for the Court to exert specific jurisdiction over Bryan and Lewis since GIT has not shown that Bryan and Lewis purposefully directed their activities to or availed themselves of the privilege to pursue activities in Texas, GIT's claims arise or result from Bryan's and Lewis's forum-related contacts, and the exercise of personal jurisdiction over Bryan and Lewis is fair and reasonable. *See STORMAN ASIA M/V*, 310 F.3d at 378. Thus, Bryan's and Lewis's motions to dismiss for lack of personal jurisdiction are hereby granted.

## CONCLUSION

The Court gave GIT several opportunities and, indeed, clear and simple instructions in hearings and in writing on how to prove that the Court has personal jurisdiction over Defendants and they have utterly failed to do so.

---

[2] GIT also submitted several other pieces of evidence, including Chris Clutter's Affidavit (Dkt. #92, Exhibit 2), James Nester's Affidavit (Dkt. #92, Exhibit 3), and an email from Bryan to Graham Dixon of CBRE (Dkt. #92, Exhibit 4). This evidence is either hearsay, irrelevant, or both. Even if it were admissible, it would not change the fact that GIT failed to prove by a preponderance of the evidence that the Court can exercise personal jurisdiction over Bryan and Lewis.

It is therefore **ORDERED** that Defendant Donald A. Bryan's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #28) is **GRANTED** and Donald A. Bryan is **DISMISSED without prejudice.**

It is further **ORDERED** that Defendant Peter H. Lewis's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #50) is **GRANTED** and Peter H. Lewis is **DISMISSED without prejudice**.

**SIGNED this 29th day of June, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE