# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GREEN ICE TECHNOLOGY, LLC | § | |
| | § | |
| v. | § | |
| | § | |
| ICE COLD 2, LLC, ECOCOOL | § | |
| TECHNOLOGIES, LLC, ECOCOOL | § | Civil Action No. 4:17-CV-00341 |
| TECHNOLOGIES MANAGEMENT, LLC, | § | Judge Mazzant |
| ECOCOOL WORLD, LLC, ECOCOOL | § | |
| ENTERPRISES, LLC, SEARCH RESULTS | § | |
| MEDIA, BHAVESH PATEL, PETER J. | § | |
| LEWIS, DONALD A. BRYAN, RAKESH | § | |
| DESAI, WAYNE RAGAN, JAMIE | § | |
| MCDANIEL, and PATRICK MORGAN | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants EcoCool Enterprises LLC's ("ECE"), Wayne Ragan's ("Ragan"), Jamey McDaniel's ("McDaniel"), and Patrick Morgan's ("Morgan")[1] Motion to Reconsider (Dkt. #96) the Court's denial of their Motion to Dismiss (Dkt. #65). After reviewing the relevant pleadings and motion, the Court finds the ECE Defendants' motion to reconsider should be granted and their motion to dismiss should be granted.

## BACKGROUND

This is a case about commercial interference. David R. Pickett ("Pickett")—CEO of U.S. Refrigeration Technologies ("USRT")—invented IceCOLD: a chemical that improves the performance and efficiency of air conditioning and refrigeration systems. Pickett sells IceCOLD through a network of licensed distributors to customers spanning the air conditioning industry.

Green Ice Technology, LLC ("GIT") was founded in 2009. Since then, GIT—first as a sub-distributor from 2009 to 2012 and then as a distributor from 2013 onward—built a relationship

---
[1] The Court collectively refers to ECE, Ragan, McDaniel, and Morgan as the "ECE Defendants."

with Pickett and a distribution channel for IceCOLD. GIT planned to market IceCOLD globally through a network of sub-distributors in over twenty countries.

In 2013, GIT entered an Independent Distributor Direct-Buy Distribution Agreement with USRT (the "GIT Distributor Agreement"). With this agreement, GIT became a master distributor of IceCOLD. Per the GIT Distributor Agreement, GIT could submit a "Protect List" to Pickett, identifying exclusive and prospective customers. The Protect List intended to bar encroachment on GIT's customers and prospective customers by other IceCOLD distributors and sub-distributors. Under the GIT Distributor Agreement, USRT agreed not to circumvent GIT's "own Distributors, ISRs, salesmen and customers" and not to "sell directly to [GIT's own Distributors, ISRs, salesmen and customers] unless [GIT] has abandoned them." (Dkt. #5 at pp. 8–9.)

On June 6, 2014, IceCOLD 2, LLC ("Ice Cold 2") and USRT entered into a Management Agreement whereby Ice Cold 2 would manage some of USRT's distributors of IceCOLD. The Management Agreement listed GIT as a "retained distributor" of USRT (Dkt. #5 at p. 9). As a retained distributor, GIT had to buy IceCOLD exclusively from USRT and kept all of its rights as a distributor. Such rights included GIT's privilege under the GIT Distributor Agreement to name its customers and potential customers in order to protect them from encroachment from other IceCOLD distributors and sub-distributors. Per the Management Agreement, Ice Cold 2 had to "comply with all distributor agreements between USRT and its distributors." (Dkt. #5 at p. 10).

Thereafter, GIT alleges that Ice Cold 2 contacted, interfered with, marketed to, and attempted to sell directly to GIT's contacts, lead generators, and sub-distributors. GIT claims that Ice Cold 2 neither complied with nor honored GIT's Protect List and letters identifying exclusive customers. GIT avers that Ice Cold 2 told GIT's contacts, lead generators, and sub-distributors

that GIT had no valid distribution agreement. GIT alleges that Defendants knew that their actions were "'certain or substantially certain' to interfere with the imminent prospective contracts with [GIT's] major customers, such as Amazon, CBRE, HEB Supermarkets, Dwyer Group/Aire Serv, and AT&T, just to name a few." (Dkt. #5 at p. 22.)

GIT also claims that Ice Cold 2 hacked GIT's website, www.greenicetech.com, to re-direct online customers to www.icecoldenergysolutions.com and then to www.icecold2.com (Dkt. #5 at p. 13). GIT alleges that the owners of the website www.icecoldenergysolutions.com and www.icecold2.com are Pickett, EcoCool Technologies, LLC, and EcoCool World, LLC. GIT further avers that Bhavesh Patel, Peter J. Lewis ("Lewis"), Donald A. Bryan ("Bryan"), and Rakesh Desai are the officers and directors of Ice Cold 2 and EcoCool World (Dkt. #5 at pp. 13–14).

On June 9, 2017, GIT filed its First Amended Complaint against Defendants, asserting claims for tortious interference with contract, tortious inference with prospective contracts and business relations, civil conspiracy, fraud, unfair competition by misappropriation, intrusion and unauthorized access to computer network, planting a malicious code/malware in a computer, and theft (Dkt. #5 at pp. 19–33). On November 3, 2017, the ECE Defendants filed their Motion to Dismiss, seeking dismissal for lack of subject matter jurisdiction on the basis of diversity, lack of personal jurisdiction, and failure to state a claim (Dkt. #65). On November 17, 2017, GIT filed its response (Dkt. #74). On November 22, 2017, the ECE Defendants filed their reply (Dkt. #75). On April 2, 2018, the Court held a hearing, partly concerning the ECE Defendant's Motion to Dismiss[2]. On April 13, 2018, the ECE Defendants filed their Supplemental Brief in Support of

---

[2] This was not an evidentiary hearing and did not change GIT's prima facie burden for proving that the Court could wield personal jurisdiction over the ECE Defendants. *See* "Rule 12(b)(2)," *infra* pp. 5–8.

3

their Motion to Dismiss, withdrawing the portion of their motion to dismiss, concerning lack of subject matter jurisdiction on the basis of diversity (Dkt. #85).

On May 17, 2018, the Court entered a Memorandum Opinion and Order (the "Court's Opinion"), denying the ECE Defendants' motion to dismiss (Dkt. #89). As a result of the Court's ruling, on June 14, 2018, the ECE Defendants filed their motion to reconsider (Dkt. #96), emphasizing that GIT only presented facts to establish personal jurisdiction over the ECE Defendants in its response to the ECE Defendants' motion to dismiss rather than in its First Amended Complaint and that GIT failed to specifically plead claims against each of the ECE Defendants for each count of the First Amended Complaint. GIT filed no response. Local Rule CV-7(d) provides as follows:

> **Response and Briefing.** The response and any briefing shall be contained in one document. A party opposing a motion shall file the response, any briefing and supporting documents within the time period prescribed by Subsection (e) of this rule. A response shall be accompanied by a proposed order conforming to the requirements of Subsection (a) of this rule. Briefing shall contain a concise statement of the reasons in opposition to the motion and a citation of authorities upon which the party relies. A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.

Local Rule CV-7(d). Since no response was filed, the Court will assume that GIT does not controvert the facts set out in the aforementioned motion.

## LEGAL STANDARD

**Rule 59(e)**

A motion seeking "reconsideration" may be construed under either Federal Rule of Civil Procedure 59(e) or 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *see also Milazzo v. Young*, No. 6:11-cv-350-JKG, 2012 WL 1867099, at *1 (E.D. Tex. May 21, 2012). Such a motion "'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*,

367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

"If a motion for reconsideration is filed within 28 days of the judgment or order of which the party complains, it is considered to be a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion." *Milazzo*, 2012 WL 1867099, at *1; *see Shepherd*, 372 F.3d at 328 n.1; *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, No. H-08-2931, 2011 WL 798204, at *2 (S.D. Tex. Mar. 1, 2011). Here, the ECE Defendants filed their motion for reconsideration within twenty-eight (28) days of the Court's Opinion; therefore, the ECE Defendants' motion is considered a Rule 59(e) motion.

A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Milazzo*, 2012 WL 1867099, at *1 (citing *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003)). "Altering, amending, or reconsidering a judgment is an extraordinary remedy that courts should use sparingly." *Id.* (citing *Templet*, 367 F.3d at 479).

## ANALYSIS

### I.     The ECE Defendants' Motion to Reconsider Is Proper

As mentioned, the ECE Defendants argue that the Court erred by considering factual allegations other than those in GIT's First Amended Complaint when denying their motion to dismiss for lack of personal jurisdiction and for failure to state a claim and by not considering

whether GIT specifically pleaded claims against each ECE Defendant for each count of the First Amended Complaint.

"The court may resolve a jurisdictional issue by reviewing pleadings[3], affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the [evidentiary] record[4], and any combination thereof." *Command-Aire*, 963 F.2d at 95 (citing *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985). Furthermore, "[w]hen deciding a Rule 12(b)(6) motion to dismiss, the district court is limited to the allegations set forth in the complaint." *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013). A plaintiff may not amend his complaint with "'briefs in opposition to a [Rule 12(b)(6)] motion to dismiss.'" *Energy Coal v. Citgo Petroleum Corp.*, 836 F.3d 457, 462 n.4 (5th Cir. 2016) (quoting *Roebuck*, 515 F. App'x at 280).

Accordingly, the Court erred by considering factual allegations in GIT's response to the ECE Defendants' motion to dismiss when deciding whether GIT properly pleaded that the Court could exert personal jurisdiction over the ECE Defendants and whether GIT stated a plausible claim for relief against the ECE Defendants. Specifically, the Court relied on the following statement from GIT's response:

---

[3] The Federal Rules of Civil Procedure recognize the following as pleadings: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." FED. R. CIV. P. 7(a). Accordingly, GIT's response to the ECE Defendants' Motion to Dismiss is not a pleading for purposes of the Court's analysis of the ECE Defendants' motion to dismiss for lack of personal jurisdiction and for failure to state a claim.

[4] In *Command-Aire*, the Fifth Circuit listed the means for resolving a jurisdictional issue, including "any part of the record," generally citing *Stuart*. *See* 963 F.2d at 95. In *Stuart*, the Fifth Circuit referred to the evidentiary record, explaining:

> The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. In ruling on the motion to dismiss, the court below considered the *entire record*, including the affidavits and documentary evidence filed by the parties, as well as the oral testimony of the plaintiffs.

*See* 772 F.2d at 1192 (citation omitted) (emphasis added). The Fifth Circuit ultimately considered the "*record evidence* in the case *sub judice*" when evaluating whether the district court had personal jurisdiction over a party. *Id.* at 1193 (emphasis added).

> [GIT] has recently learned that the [ECE Defendants], at least . . . McDaniel, made a presentation to the Siemens company in San Antonio, Texas in October 2017, in an attempt to sell the subject product as a purported legitimate distributor. This physical presentation by at least . . . McDaniel, resulted from previous contacts with Siemens in San Antonio, Texas. [GIT] understands that testimony of those persons with knowledge of these facts could testify that McDaniel, in addition to making a sales presentation(s) after being served with this lawsuit, told a Siemens representative(s) that [GIT] was not a legitimate distributor.

(Dkt. #74 at p. 18). In its response, GIT further alleged that it had "already been working with Siemens for several years." (Dkt. #74 at p. 18). Relying on these allegations, the Court found that the GIT pleaded that the ECE Defendants purposefully availed themselves of Texas by pursuing business with Siemens in San Antonio and by telling a Siemens representative that GIT was "not a legitimate distributor" of IceCold, thus giving rise to GIT's claims against it and permitting the exercise of specific jurisdiction (Dkt. #75 at p. 18; Dkt. #89 at p. 10). The Court also concluded that by making these allegations GIT sufficiently pleaded a plausible claim for relief, regarding several causes of action in its First Amended Complaint (Dkt. #89 at p. 11). Since these allegations came from GIT's response, however, the Court could not use them to establish personal jurisdiction over the ECE Defendants or that GIT stated a plausible claim for relief. In turn, the Court will reassess the ECE Defendants' motion to dismiss for lack of personal jurisdiction and for failure to state a claim by solely examining the allegations in GIT's First Amended Complaint.

II. **GIT Did Not Plead Sufficient Facts to Establish that the Court Could Exercise Personal Jurisdiction over the ECE Defendants**

**Rule 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's

burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecomm., Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction."

*Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the Court to exercise specific jurisdiction, the Court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*.

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is

unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

The ECE Defendants assert that GIT has alleged no factual basis for the Court to exercise general or specific jurisdiction over them and has failed to make a prima facie showing to support the Court's personal jurisdiction. The ECE Defendants argue that GIT's First Amended Complaint hardly mentions the ECE Defendants, describing ECE as a "limited liability company in Marietta, Georgia," labeling Ragan, McDaniel, and Morgan as "residents of Georgia," and only including ECE in the body of the First Amended Complaint through what the ECE Defendants claim appears to be a typo. (Dkt. #5 at p. 3; Dkt. #65 at p. 9). The ECE Defendants contend that GIT wholly failed to allege (1) that the ECE Defendants do any business in Texas, (2) that the ECE Defendants perpetrated any "acts or omission" in Texas, or (3) that any of the ECE Defendants are in any way connected to Texas (Dkt. #65 at p. 10). GIT counters that the First Amended Complaint "provides much specificity with regard to the Plaintiff's allegations of interference with contracts and computer network intrusion." (Dkt. #74 at p. 11).

**A. GIT's Allegations Do Not Support General Jurisdiction over the ECE Defendants**

Given the high bar for establishing general jurisdiction over a person or company, the pleaded allegations in GIT's First Amended Complaint do not support general jurisdiction. *Multidata Sys. Int'l Corp.*, 523 F.3d at 609. As the ECE Defendants accurately assert, GIT hardly mentions the ECE Defendants in the First Amended Complaint and, somewhat surprisingly given the circumstances, barely discusses the ECE Defendants in its response to the ECE Defendants' motion to dismiss. Meanwhile, ECE is a Georgia limited liability company with its principal place of business in Marietta, Georgia (Dkt. #74, Exhibit 1–2). Morgan, Ragan, and McDaniel also reside in Marietta, Georgia (Dkt. #5 at pp. 3–4). Accordingly, GIT has not adequately pleaded the

systematic and continuous contacts needed for the Court to exercise general jurisdiction over the ECE Defendants. *Cent. Freight Lines*, 322 F.3d at 381. Thus, the Court turns to whether it can wield specific jurisdiction over the ECE Defendants.

### B. GIT's Allegations Do Not Support Specific Jurisdiction over the ECE Defendants

To make a prima facie case for specific jurisdiction over the ECE Defendants, GIT must plead that the ECE Defendants purposefully availed themselves of Texas and the ECE Defendants' purposeful availment gave rise to GIT's claims. *STORMAN*, 310 F.3d at 378. Since the ECE Defendants presented no affidavits to controvert GIT's allegations, the Court must accept GIT's pleaded, factual allegations as true and resolve them in GIT's favor in its personal jurisdictional analysis. *Quintana*, 259 F. Supp. 2d at 557.

### i. GIT Failed to Plead Adequate Facts for the Court to Exercise Specific Jurisdiction over Ragan, Morgan, and McDaniel as Individuals

The Fifth Circuit permits a corporate officer to be held individually liable when a corporate entity serves as their alter ego or the officer perpetrates tortious conduct in the forum on the corporation's behalf. *Stuart*, 772 F.2d at 1197. Aside from naming them in its list of parties and "Requested Relief" section, the First Amended Complaint does not substantively discuss Ragan, McDaniel, and Morgan at all, let alone with regard to the events leading to its several causes of action (Dkt. #5 at pp. 3–4, 34). The First Amended Complaint also fails to ascribe the necessary circumstances to Ragan's, McDaniel's, and Morgan's actions as officers of ECE for the Court to wield personal jurisdiction over them as individuals. Indeed, the First Amended Complaint does not even suggest that Ragan, Morgan, and McDaniel are officers of ECE and GIT only claimed this in its response to the ECE Defendants' motion to dismiss (Dkt. #74 at p. 17; Dkt. #74, Exhibit 3 at p. 1). In turn, GIT failed to adequately plead facts for the Court to exercise specific jurisdiction over Ragan, McDaniel, and Morgan in their individual capacities.

### ii. GIT Failed to Plead Sufficient Facts for the Court to Wield Specific Jurisdiction over ECE

GIT mentions ECE once in the body of its First Amended Complaint, alleging

> [Lewis], [Bryan], and [ECE] only targeted GIT's major clients, and would contact these clients just as GIT was very close to finalizing the contract terms and signing the agreement. The Defendants knew full well in each of these instances of tortious interference that their actions were "certain or substantially certain" to interfere with the imminent prospective contracts with these major customers, such as Amazon, CBRE, HEB Supermarkets, Dwyer Group/Aire Serv, and AT& T, just to name a few (See Exhibit A).

(Dkt. #5 at p. 22). The context of ECE's mention might puzzle the reader since Lewis and Bryan are not allegedly affiliated with the company. The Court is not responsible, however, for judging the quality of GIT's briefing and considers only the First Amended Complaint's text and its consequences for the Court's personal jurisdictional analysis. That said, this pleading does not adequately explain how ECE purposefully availed itself of Texas and how that availment gave rise to GIT's claims. First, GIT's claim that ECE "targeted" and "contacted" its "Major Customers" does not illustrate tortious interference without further explanation (Dkt. #5 at p. 22). Put simply, a company could target or contact another company with an equal likelihood of not interfering with prospective business relations and contracts as interfering with prospective business relations and contracts. Second, GIT pleads that ECE contacted "Major Customers" but does not identify these Major Customers in any non-conclusory statement (Dkt. #5 at p. 22). GIT certainly claimed that "[t]he Defendants knew full well in each of these instances of tortious interference that their actions were 'certain or substantially certain' to interfere with the imminent prospective contracts with these major customers, such as Amazon, CBRE, HEB Supermarkets, Dwyer Group/Aire Serv, and AT& T. . . ." This statement, however, founders as, again, it does not explain how ECE interfered with prospective contracts and is also conclusory. Thus, even if the Court relied on it to satisfy personal jurisdiction, which it does not due to its utter lack of specificity and adequate

exposition, it could not use it to satisfy the pleading requirements to defeat a Motion to Dismiss under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (explaining a court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth . . ." when deciding whether a pleading survives a Rule 12(b)(6) Motion to Dismiss). Accordingly, the Court finds that no pleading in the First Amended Complaint proves that ECE purposefully availed itself of Texas and that purposeful availment yielded GIT's claims against it. *STORMAN*, 310 F.3d at 378. Thus, the Court finds that GIT failed to plead sufficient facts for the Court to exert personal jurisdiction over ECE.

Since GIT failed to plead an adequate basis for the Court to wield personal jurisdiction over the ECE Defendants, the Court need not address whether GIT pleaded a plausible claim for relief against the ECE Defendants under Rule 12(b)(6).

## CONCLUSION

It is, therefore, **ORDERED** that Defendants EcoCool Enterprises, LLC's, Wayne Ragan's, Jamey McDaniel's, and Patrick Morgan's Motion to Reconsider (Dkt. #96) is **GRANTED**.

It is further **ORDERED** that the Motion to Dismiss of Defendants EcoCool Enterprises, LLC, Wayne Ragan, Jamey McDaniel, and Patrick Morgan (Dkt. #65) is **GRANTED**. It is further **ORDERED** that EcoCool Enterprises, LLC, Wayne Ragan, Jamey McDaniel, and Patrick Morgan are **DISMISSED without prejudice**.

**SIGNED this 1st day of August, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE